**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| RULE 14 LLC, | § | |
| | § | Case No.: 2:23-cv-627 |
| Plaintiff, | § | |
| | § | DEMAND FOR JURY TRIAL |
| v. | § | |
| | § | |
| UIPATH INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF RULE 14 LLC'S COMPLAINT

COMES NOW Plaintiff Rule 14 LLC ("Rule 14") complaining of Defendant UiPath Inc. ("Defendant" or "UiPath"), and respectfully shows the Court as follows:

## I.
## NATURE OF THE ACTION

1.      Rule 14's inventors developed breakthrough technology in the mining and processing of unstructured, real-time, and adaptive data.  Their innovative discoveries address problems in data creation, storage, discovery, and utilization that arose due to the unique nature of data in the Internet Age.  The patented technology results in a concrete, improvement to data mining methods and systems that is uniquely situated to address problems in managing, extracting, and using internet data.

2.      UiPath took Rule 14's inventive ideas and intellectual property without authorization and incorporated Rule 14's patented technology into its products and services.

3.      Rule 14 has no recourse but to file this action to stop UiPath's misuse of its intellectual property. Rule 14 has invested millions of dollars and a decade of hard work to develop and commercialize products embodying its intellectual property.  Rule 14 cannot fairly compete against a behemoth like UiPath unless its intellectual property is respected.

PLAINTIFF RULE 14 LLC'S COMPLAINT

4.      In the end, this case is about ensuring a level playing field so that small competitors like Rule 14 can compete fairly, based on their hard work and protected innovations, against larger companies like UiPath.

## II.
## PARTIES

5.      Rule 14 LLC was formed in 2011 under the laws of the State of Nevada.  Rule 14's principal place of business is located at 2701 East Grauwyler Road, Irving, Texas 75061-3414.  It filed patents describing and claiming the pioneering inventions in this case and owns the resulting patents.  Sharon Gill Chadha, Xin Cheng, and Parvinder Chadha are the named inventors.  Jito Chadha serves as Rule 14's Chief Executive Officer.

6.      On information and belief, UiPath Inc. is a publicly traded corporation organized and existing under the laws of the State of Delaware with a place of business at 7700 Windrose Avenue, Suite 02-102, Plano, Texas 75024-0112.

## III.
## JURISDICTION AND VENUE

7.      This is a civil action asserting claims of patent infringement of U.S. Patent Nos. 9,229,977 ("the '977 patent") and 11,048,712 ("the '712 patent") (collectively, the "Asserted Patents").

8.      This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338.

9.      This Court has personal jurisdiction over UiPath.  UiPath has continuous and systemic business contacts with the State of Texas.  UiPath, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, providing, supporting, and advertising its products in the State of Texas and in this District.   UiPath, directly and/or through subsidiaries or intermediaries, has

PLAINTIFF RULE 14 LLC'S COMPLAINT – page 2

purposefully and voluntarily placed its infringing products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in this District.

10.    Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b).  UiPath has offered, sold and provided, supported, and continues to offer, sell and provide, and support its infringing products and services in this District.  For example, on information and belief, UiPath sells and offers to sell the infringing products and services to partners or customers in this District, including from its office in this District, at Plano, Texas office, at 7700 Windrose Avenue, Suite 02-102, Plano, Texas 75024-0112.  UiPath has committed acts of patents infringement in this District and regularly does business in this District.

11.    On information and belief, many UiPath employees with information and knowledge relevant to the claims in this case are located in this District.  For example, on information and belief, Anuj Mahajan, Senior Director and Digital Strategy Principal at UiPath since at least July 2019, is located in this District.[1]  Anuj Mahajan's public LinkedIn profile represents that, on behalf of UiPath, he has "[l]ed GTM initiatives for the Automation Consulting team and influenced license sales of $80M+, and service sales and delivery of over $1M+ over a portfolio of 20 accounts in one fiscal year[.]"  In addition, his profile states that, on behalf of UiPath, he "[l]ed multiple high impact teams in the delivery of complex automation programs and projects in varied areas such as automation strategy, adoption plan and enablement, automation operating model (AOM) and its federation/ operationalization, chargeback, Citizen model (democratization)[.]"  His profile also describes that, in his current role, he has "led several customer-facing programs and projects to successful execution through his business acumen,

---

[1] https://www.linkedin.com/in/anujmahajan.

structured approach, and problem-solving skills[,]" and that "[b]ased on field experience, Anuj continually develops frameworks for implementation, adoption, and democratization of Automation across the enterprise as well as assessing Customer Maturity."

12.     For another example, on information and belief, Shoaib Ali, Senior Technical Account Manager at UiPath, since April 2022, and previously Technical Account Manager, from November 2020-April 2022, is located in this District.[2]  In a recommendation that Mr. Ali received on his public LinkedIn page from John Sharpe, Mr. Ali was described as having "extensive knowledge of the UiPath platform and product stack" and as having "a deep understanding of how to implement the product[.]"

13.     For another example, on information and belief, Alex Dixon, Director of GSI Alliances at UiPath, since October 2022, and previously Director of GTM & Industry Solutions at UiPath, from December 2021-October 2022, is located in this District.[3]  Alex Dixon's public LinkedIn profile represents that he is "focused on development of vertical solutions leveraging UiPath's hyperautomation platform[,]" and that "[t]hese 'powered-by-UiPath' solutions focus are intimately paired with GTM motions he leads, resulting in increased value for clients, partners, and UiPath."  His profile states that "UiPath is dedicated to delivering the Fully Automated Enterprise™, one where companies use automation to unlock unlimited growth opportunities[,]" and that UiPath "do[es] so through offering an end-to-end platform for hyperautomation, combining the leading Robotic Process Automation (RPA) solution with a full suite of capabilities including IDP, LCAD, AI, Process Discovery, and more to enable every organization to rapidly scale digital business operations."

---

[2] https://www.linkedin.com/in/shoaib-ali-96012767.
[3] https://www.linkedin.com/in/alexanderrdixon.

14.     For another example, on information and belief, Sagar Agrawal, Senior Manager, Technical Account Management at UiPath, since December 2022, and previously Senior Manager, Customer Success at UiPath from March 2020-November 2022 and Customer Success Manager at UiPath from May 2019-March 2020, is located in this District.[4] Mr. Agrawal's public LinkedIn profile lists his current role as involving "[m]anaging a team of Technical Account Managers (TAM) and Automation Program Advisors (APA) that delivers Enterprise Success Support Tier services (paid support) to UiPath's strategic customers" and "[r]ecruiting and mentoring the team members."  He states that UiPath's "Technical Account Management team executes upon a wide variety of customer technical enablement efforts, ensuring they launch UiPath successfully, adopt it widely across enterprise, and are continually driving business value from UiPath."

15.     For another example, on information and belief, Cynthia Libby, Consulting Director at UiPath, since August 2022, and previously Technical Account Manager at UiPath from July 2021-August 2022, is located in this District.[5]  Ms. Libby's public LinkedIn profile lists her as a member of UiPath's "STAR (Strategic Advisor Resident) team[.]"  Her profile also states that she has "made a career out of automating repetitive tasks and helping others do the same. UiPath robots can do those repetitive tasks while you get the chance to focus on more creative aspects of your job. At UiPath we see boundless potential in the way we live. It drives the way we work. We accelerate our efforts so that we can innovate and evolve with speed."

16.     On information and belief, there are many other such knowledgeable UiPath employees in this District, including:

---

[4] https://www.linkedin.com/in/sagaragrawal.
[5] https://www.linkedin.com/in/cynthialibby.

PLAINTIFF RULE 14 LLC'S COMPLAINT – page 5

a. Dalton Russell, Product Support Engineer II at UiPath (since October 2023) and previously Product Support Engineer at UiPath (April 2022-October 2023);[6]

b. Erika Busey, Enterprise Account Executive at UiPath (since February 2022);[7]

c. Tyler Toth, Principal Engineering Manager at UiPath (since April 2023) and previously Senior Software Engineer at UiPath (March 2021-April 2023);[8]

d. Atul Barve, Vice President of Engineering at UiPath (since March 2021);[9]

e. Chinna Babu, Senior Software Engineer at UiPath (since March 2021);[10]

f. Dan Florescu, Software Engineer II at UiPath (since August 2021);[11]

g. Erika Wall, Director, GTM Strategy & Operations – Renewals at UiPath (since January 2022).[12]

17.    UiPath has also hosted events regarding the Accused Products/Services in this District, including "the Power of UiPath AI Center API[.]"[13]  On information and belief, UiPath has a "UiPath Dallas Chapter,"[14] which has members knowledgeable about, and creates and

---

[6] https://www.linkedin.com/in/dalton-russell-52310bb3 (Mr. Russell was "part of a two person team that developed a bot using UiPath Studio to automate part of the college admissions process at the 2019 UiPath RPA League Hackathon in Houston that won first prize.").
[7] https://www.linkedin.com/in/erika-busey-b7b48b6.
[8] https://www.linkedin.com/in/tyler-toth-441a38127.
[9] https://www.linkedin.com/in/atul-barve-8641801.
[10] https://www.linkedin.com/in/ichinna.
[11] https://www.linkedin.com/in/dan-florescu-a29984163.
[12] https://www.linkedin.com/in/erikapwall.
[13] https://community.uipath.com/events/details/uipath-dallas-texas-presents-unlock-the-power-of-uipath-ai-center-api.
[14] *Id.*; https://community.uipath.com/dallas-texas.

disseminates materials and discusses information relevant to, the claims in this case, including "Get[ting] your documents processed intelligently" with "Document Understanding" and "Data extraction."[15]

18.     On information and belief, including based on the UiPath employees, office, and events discussed above, documents relevant to the claims in this case are also likely located in and/or accessible in this District.

19.     Rule 14 is headquartered at 2701 East Grauwyler Road, Irving, Texas 75061-3414, in an approximately 3,000 square foot office that is located less than twenty miles from this District.  Documents relevant to the claims in this case, including to the development of the patented technology and the proper damages in this case, are accessible from this office.  Rule 14's headquarters is shown below:



---

# IV.
# BACKGROUND

A.     **Rule 14 and Its Patented Technology**

20.     The internet fundamentally changed how data is stored, created, found, and utilized.  '977 patent at 1:21-31; '712 patent at 1:29-40.  This change was not just that the amount of data increased—it was a fundamental change to the nature of data creation, storage, management, and use.  *Id.*  Unlike data stores before the internet, data in the internet world was decentralized, unstructured, and inherently dynamic.  *Id.*; *see also* '977 patent at 1:36-43; '712 patent at 1:45-53.  Before the patented invention, internet search engines failed to take into account this fundamental difference in data and thus were "not designed for analyzing multiple data points in real time."  '977 patent at 1:32-33; '712 patent at 1:41-42.  Additionally, these previous systems were limited to searching for "exact search term[s]" and "limited to querying indexed web sites."  '977 patent at 1:33-35; '712 patent at 1:42-45.  Thus, data mining processes, like search engines, were not able to search unstructured, unindexed, and real-time data, such as data from "web sites behind firewalls, and/or comment sections on a web page."  '977 patent at 1:36-43; '712 patent at 1:45-53.

21.     The specifications of the Asserted Patents explain that "[w]ith the proper tools, the data extracted from the data sources may be used to provide analysis for various topics."  '977 patent at 1:25-27; '712 patent at 1:25-27.  The patented invention is that concrete "proper tool[]."  The inventors recognized that "as the demand for real-time information continues to increase, there exists a need for further improvements in data mining and web searching technologies."  '977 patent at 1:45-48; '712 patent at 1:54-59.

22.     In solving these new problems presented by the nature of the internet, the inventors of the Asserted Patents discovered one of the central innovations of the Asserted Patents: creating

a communication channel based on data continuously extracted from databases, selected based on their relevance to a user's interest, where the monitored databases are determined by generating a user query, expanding the query to include related words, and using accuracy thresholds to select the databases. This innovation is recited in, for example, claim 1 of the '977 patent and claim 1 of the '712 patent. '977 patent at cl. 1; '712 patent at cl. 1.

23.     The Asserted Patents relate to "providing a real-time data mining platform and interactive feedback platform." '977 patent at 1:15-18; '712 patent at 1:23-25 (describing the "Field"). In particular, as discussed above, the prior art systems "are not designed for analyzing multiple data points in real time." '977 patent at 1:32-33; '712 patent at 1:41-42. In the current state of technology, there are large amounts of data stored in an unorganized and unstructured manner (a problem that has no brick-and-mortar analogy). The prior art could not search or use all of this data efficiently (if at all) because of the unique nature of internet data (decentralized, disaggregated, and unstructured). '977 patent at 14:1-36; '712 patent at 16:31-65. There was an unmet need to be able to mine and use these new data structures. '977 patent at 7:55-62, 15:48-55; '712 patent at 8:51-58. The novel combination of (1) expanding the search term to related concepts, (2) executing the search, (3) selecting relevant data sources based on that execution, and then (4) monitoring those selected data sources allows the system to (5) establish a relevant and useful communication channel with a second user (not the initial user who made the query) to perform some useful task, and thus ultimately to meet this need. Rule 14's innovation constitutes a specific sequence of steps that improves the operation of data mining and processing.

24.     Rule 14 has been recognized for its innovations and has been granted patents on its technologies by the U.S. Patent and Trademark Office ("PTO").

25.     On January 5, 2016, the PTO duly and legally issued U.S. Patent No. 9,229,977, entitled "Real-Time And Adaptive Data Mining," with Ms. Chadha, Mr. Cheng, and Mr. Chadha as inventors.  The application giving rise to the '977 patent was filed on June 26, 2013 and claims priority to U.S. provisional patent application having a provisional application number of 61/679,024 and filed on August 2, 2012.  A true and correct copy of the '977 patent is attached as Exhibit A.

26.     On June 29, 2021, the PTO duly and legally issued U.S. Patent No. 11,048,712, entitled "Real-Time And Adaptive Data Mining," with Ms. Chadha, Mr. Cheng, and Mr. Chadha as inventors.  The application giving rise to the '712 patent was filed on December 20, 2018 and claims priority to U.S. patent application having an application number of 14/960,316 and filed on December 4, 2015, now Patent No. 10,198,516, which claims priority to U.S. patent application having an application number of 13/928,313 and filed on June 26, 2013, now Patent No. 9,229,977, and U.S. provisional patent application having a provisional application number of 61/679,024 and filed on August 2, 2012.  A true and correct copy of the '712 patent is attached as Exhibit B.

27.     Rule 14 is the sole and exclusive owner of all rights, title, and interest to the Asserted Patents, including the rights necessary to bring this action and to recover past and future damages.

28.     The Asserted Patents are enforceable and valid.

**B.      UiPath's Infringement of Rule 14's Intellectual Property**

29.     On information and belief, UiPath has infringed and continues to infringe one or more claims of the Asserted Patents by, at minimum, making, using, offering for sale, and selling infringing products and services in the United States and in this District.

30.     The accused products include, without limitation, UiPath's UiPath Automation Cloud and Automation Suite, as well as its standalone deployments (collectively, the "Accused Products/Services").  Each of these products and services practice at least one claim of each Asserted Patent.

31.     On information and belief, after UiPath learned about Rule 14's technology, UiPath released and began selling and providing in the United States the Accused Products/Services which infringe Rule 14's patented inventions.

32.     As an example, UiPath infringes when providing its Automate, Operate, and Discover products/services, such as Orchestrator, Studio, StudioX, Studio Web, Document Understanding, AI Center, Robots, Action Center, Communications Mining, Process Mining, Task Mining, Task Capture, and Automation Hub.[16]  UiPath's Accused Products/Services also infringe when they are used in concert with models or code provided through UiPath Marketplace.

33.     UiPath infringes through its various products/services both alone and in combination.  In general, as shown below, UiPath mines and analyzes data through its Discover products/services and then creates and sends communications through its various automation products/services.

---

[16] https://docs.uipath.com/overview/other/latest/overview/product-availability.



*https://www.uipath.com/product/automation-hub.*

34.　For an example of UiPath's data mining, UiPath's Communications Mining "turns every message into actionable data, in real time and on any communications channel."[17] In particular, it "combines AI and automation so you can automate your most common business requests and time-consuming conversations. From beginning to end."[18]  UiPath's Communications Mining, Process Mining, Task Mining, Automation Hub, and Task Capture all satisfy the data mining elements of the Asserted Patents.

35.　For another example, UiPath Studio "is advanced automation software that gives everyone, from business users to advanced RPA developers, the right automation canvas to build great software robots—and organizations the right governance tools to manage them all."[19]  For another example, "UiPath Robots use the data created by Communications Mining to extend

---

[17] https://www.uipath.com/product/communications-mining.
[18] *Id.*
[19] https://www.uipath.com/product/studio.

automation into service and conversation-based processes. This allows businesses to automate transactional requests and workflows. Tasks like triaging emails, updating customer information, and case creation are now automated from end to end by UiPath."[20]  UiPath's Orchestrator, Studio, StudioX, Studio Web, Document Understanding, AI Center, Robots, Action Center all satisfy the establishing a communication channel element of the Asserted Patents.

36.    Indeed, UiPath's marketing looks remarkably similar to the patented technology:

---

[20] https://www.uipath.com/blog/product-and-updates/introducing-uipath-communications-mining.

PLAINTIFF RULE 14 LLC'S COMPLAINT – page 13



**FIG. 6**

*'977 patent at Fig. 6*



*https://www.youtube.com/watch?v=jHAjo3jDIF8&t=1671s at 27:52.*

37.     For at least these reasons, the Accused Products/Services directly infringe at least claim 1 of the '977 patent and claim 1 of the '712 patent.

**V.**
**COUNT I: INFRINGEMENT OF THE '977 PATENT**

38.     Rule 14 incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

39.     On information and belief, UiPath has infringed and will continue to infringe the '977 patent.  UiPath directly infringes the '977 patent under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States and in this District products and services covered by one or more claims of the '977 patent, including the Accused Products/Services.  As an example, the Accused Products/Services directly infringe at least claim 1 of the '977 patent.

40.     Claim 1 of the '977 patent is directed to a method of analyzing data comprising various steps:

a.   generating, via a first user, a query based at least in part on a topic of interest;

b.  expanding search terms of the query;

c.  executing the query on a plurality of data sources;

d.  selecting at least one data source from the plurality of data Sources, the at least one data source being selected when results of the query are greater than or equal to an accuracy thresholds;

e.  monitoring, based on a set schedule, the at least one data source to extract data from the at least one data source when at least an update to stored data that matches the query, newly added data that matches the query, or a combination thereof, and

f.  establishing a communication channel with a second user based at least in part on the data extracted from the at least one monitored data source.

41.    On information and belief, the Accused Products/Services practice every element of Claim 1 of the '977 patent.  For example, on information and belief, UiPath's Communications Mining analyzes data.    https://www.uipath.com/blog/product-and-updates/introducing-uipath-communications-mining ("UiPath Communications Mining is a new capability to understand and automate business communications. It uses state-of-the-art AI models to turn business messages—from emails to tickets—into actionable data. It does this in real time and on all major business communications channels.").

42.    On information and belief, UiPath's Communications Mining generates, via a first user, a query based at least in part on a topic of interest. https://www.youtube.com/watch?v=jHAjo3jDIF8 at 34:49-56 ("[S]o the first thing Communications Mining is telling me is can you upload a taxonomy, right? Can you upload a predefined list of labels that you want to look for . . . ."), 35:15-35:21 ("[S]o what Communications

Mining has done is it's looked through all of those emails all of those hundred and thirteen thousand emails and it's created a cluster of similar looking emails right similar looking emails that all have similar wording."),



*https://www.youtube.com/watch?v=jHAjo3jDIF8 at 34:37.*



*https://www.youtube.com/watch?v=jHAjo3jDIF8 at 35:26.*

43.     On information and belief, UiPath's Communications Mining expands search terms of the query.    https://www.youtube.com/watch?v=jHAjo3jDIF8 at 35:15-35:21 ("[S]o what Communications Mining has done is it's looked through all of those emails all of those hundred and thirteen thousand emails and it's created a cluster of similar looking emails ***right similar looking emails*** that all have ***similar wording***." (emphasis added)).

44.     On information and belief, UiPath's Communications Mining executes the query on a plurality of data sources.    https://www.youtube.com/watch?v=jHAjo3jDIF8 at 35:15-35:21 ("[S]o what Communications Mining has done is it's looked through all of those emails all of those hundred and thirteen thousand emails and it's created a cluster of similar looking emails right similar looking emails that all have similar wording.").

45.     On information and belief, UiPath's Communications Mining selects at least one data source from the plurality of data sources, the at least one data source being selected when

results of the query are greater than or equal to an accuracy thresholds.  For example, UiPath selects a data source (including communications from those data sources) to apply the communications with a particular label to put into a stream, when the communications within that label meet sufficient confidence thresholds (accuracy thresholds).

## Selecting label confidence thresholds

**Introduction**

The platform is typically used in one of the first steps of an automated process: ingesting, interpreting and structuring an inbound communication, such as a customer email, much like a human would do when that email arrived in their inbox.

When the platform predicts which labels (or tags) apply to a communication, it assigns each prediction a confidence score (%) to show how confident it is that the label applies.

If these predictions are to be used to automatically classify the communication, however, there needs to be a binary decision - i.e. does this label apply or not? This is where **confidence thresholds** come in.

A confidence threshold is the confidence score (%) at or above which an RPA bot or other automation service will take the prediction from the platform as a binary 'Yes, this label does apply' and below which it will take the prediction as a binary 'No, this label does not apply'.

*https://support.reinfer.io/support/solutions/articles/48001157667-selecting-label-confidence-thresholds*.

Here you can:

- Give the stream a title and a description
- Set an API name
- Specify the model (labeller) version to use (this is very important)
- Use the filters bar on the left-hand-side to set user-property filters which must be satisfied for verbatims to enter the queue for the stream
- Select a label and a confidence threshold as per below:

*https://support.reinfer.io/support/solutions/articles/48000982498-create-a-stream*.

PLAINTIFF RULE 14 LLC'S COMPLAINT – page 19



*https://support.reinfer.io/support/solutions/articles/48000982498-create-a-stream.*

46.    On information and belief, UiPath's Communications Mining monitors, based on a set schedule, the at least one data source to extract data from the at least one data source when at least an update to stored data that matches the query, newly added data that matches the query, or a combination thereof.  UiPath monitors the data sources based on a schedule.  For example, UiPath explains how to "Monitor your communication"— "UiPath gives businesses a custom-filtered, real-time view of all service channels—extracting the information they care about most. Built-in analytics allow process owners to track trends and measure service quality and performance at all levels. Custom real-time alerts enable teams to respond to breaking issues in an agile way, driving continuous improvement."  https://www.uipath.com/blog/product-and-updates/introducing-uipath-communications-mining.

*https://www.youtube.com/watch?v=Qayl7M8u5AQ.*

47.    On information and belief, UiPath's Communications Mining establishes a communication channel with a second user based at least in part on the data extracted from the at least one monitored data source.  *See, e.g.*, https://www.uipath.com/blog/product-and-updates/introducing-uipath-communications-mining ("UiPath Robots use the data created by Communications Mining to extend automation into service and conversation-based processes. This allows businesses to automate transactional requests and workflows. Tasks like triaging emails, updating customer information, and case creation are now automated from end to end by UiPath.").

48.    The other Accused Products/Services similarly practice every element of Claim 1 of the '977 patent.

49.    UiPath of course knows how its products operate, and on information and belief, could have investigated the '977 patent.  UiPath has been given further notice of the '977 patent

and their infringement of the '977 patent through the filing of this Complaint. On information and belief, UiPath is either knowingly infringing the '977 patent or is willfully blind to its infringement, and continues to act in wanton disregard of Rule 14's patent rights. On information and belief, UiPath has made no attempts to design around the '977 patent or otherwise stop its infringing behavior. UiPath's infringement of the '977 patent therefore has been and remains willful.

50.    UiPath also indirectly infringes the '977 patent by inducing others to infringe and contributing to the infringement of others, including third party users of UiPath's Accused Products/Services in this District and throughout the United States. As described above, on information and belief, UiPath has known about the '977 patent since the filing of this Complaint.

51.    On information and belief, UiPath has actively induced the infringement of the '977 patent under 35 U.S.C. § 271(b) by actively inducing the infringement of Accused Products/Services by third parties in the United States. UiPath knew or was willfully blind to the fact that its conduct would induce these third parties to act in a manner that infringes the '977 Patent in violation of 35 U.S.C. § 271(a).

52.    UiPath actively encourages and continues to actively encourage third parties to directly infringe the '977 Patent by, for example, marketing the Accused Products/Services and infringing functionalities to consumers; working with consumers to implement, install and/or operate the Accused Products/Services and infringing functionalities; creating, implementing, maintaining, and advertising the UiPath Marketplace; fully supporting and managing consumers' continuing use of the Accused Products/Services and infringing functionalities; and providing

technical assistance to consumers during their continued use of the Accused Products/Services and infringing functionalities.[21]

53.    On information and belief, UiPath contributorily infringes the '977 Patent under 35 U.S.C. § 271(c) by importing, selling, and/or offering to sell within the United States the Accused Products/Services (or components thereof) that constitute a material part of the claimed invention and are not staple articles of commerce suitable for substantial non-infringing use.

**VI.**
**COUNT II: INFRINGEMENT OF THE '712 PATENT**

54.    Rule 14 incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

55.    On information and belief, UiPath has infringed and will continue to infringe the '712 patent.  UiPath directly infringes the '712 patent under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States and in this District products and services covered by one or more claims of the '712 patent, including the Accused Products/Services.  As an example, the Accused Products/Services directly infringe at least Claim 1 of the '712 patent.

56.    Claim 1 of the '712 patent is directed to method of analyzing data comprising various steps:

---

[21] *See e.g.,* https://marketplace.uipath.com; https://www.uipath.com/learning/video-tutorials; https://www.uipath.com/blog; https://www.uipath.com/resources/all; https://www.uipath.com/learning/video-tutorials/workflow-automation-uipath-studio; https://docs.uipath.com/studio/standalone/2023.4/user-guide/tutorials; https://www.uipath.com/support; https://www.uipath.com/rpa/what-is-process-mining; https://forum.uipath.com/t/how-to-use-process-mining-tool/542677; https://www.uipath.com/product/process-mining; https://docs.uipath.com/communications-mining/automation-cloud/latest/user-guide/gs-technical-support; https://forum.uipath.com/t/how-to-add-task-mining-option-to-automation-cloud/318724; https://www.uipath.com/product/task-mining; https://forum.uipath.com/t/how-to-enable-communication-mining/529855; https://www.uipath.com/product/communications-mining.

a.  receiving, from a first user, a query for non-textual data;

b.  expanding search terms of the query;

c.  executing the query on a plurality of data sources;

d.  selecting at least one data source from the plurality of data sources, the at least one data source being selected when results of the query are greater than or equal to an accuracy thresholds;

e.  monitoring, based on a set schedule, the at least one data source to extract non-textual data from the at least one data source when at least an update to stored data matches the query, newly added non-textual data matches the query, or a combination thereof; and

f.  establishing a communication channel with a second user based at least in part on the data extracted from the at least one monitored data source.

57.    On information and belief, the Accused Products/Services practice every element of Claim 1 of the '712 patent.  For example, on information and belief, UiPath's Communications Mining analyzes data.   https://www.uipath.com/blog/product-and-updates/introducing-uipath-communications-mining ("UiPath Communications Mining is a new capability to understand and automate business communications. It uses state-of-the-art AI models to turn business messages—from emails to tickets—into actionable data. It does this in real time and on all major business communications channels.").

58.    On information and belief, UiPath's Communications Mining receives, from a first user, a query for non-textual data.  https://www.youtube.com/watch?v=jHAjo3jDIF8 at 34:49-56 ("[S]o the first thing Communications Mining is telling me is can you upload a taxonomy, right? Can you upload a predefined list of labels that you want to look for . . . ."), 35:15-35:21 ("[S]o

what Communications Mining has done is it's looked through all of those emails all of those hundred and thirteen thousand emails and it's created a cluster of similar looking emails right similar looking emails that all have similar wording."). This includes non-textual data. *See, e.g.*, https://www.uipath.com/product/document-understanding ("Wouldn't it be great if software robots could understand documents? To extract, interpret, and process data for you, even from PDFs, images, handwriting, and scans? UiPath Document Understanding helps your robots do just that. Delegate more of your digital paperwork with a boost from AI."); https://docs.uipath.com/document-understanding/automation-cloud/latest/user-guide/introduction.



*https://www.youtube.com/watch?v=jHAjo3jDIF8 at 34:37.*



*https://www.youtube.com/watch?v=jHAjo3jDIF8 at 35:26.*

59.     On information and belief, UiPath's Communications Mining expands search terms of the query.   https://www.youtube.com/watch?v=jHAjo3jDIF8 at 35:15-35:21 ("[S]o what Communications Mining has done is it's looked through all of those emails all of those hundred and thirteen thousand emails and it's created a cluster of similar looking emails ***right similar looking emails*** that all have ***similar wording***." (emphasis added)).

60.     On information and belief, UiPath's Communications Mining executes the query on a plurality of data sources.   https://www.youtube.com/watch?v=jHAjo3jDIF8 at 35:15-35:21 ("[S]o what Communications Mining has done is it's looked through all of those emails all of those hundred and thirteen thousand emails and it's created a cluster of similar looking emails right similar looking emails that all have similar wording.").

61.     On information and belief, UiPath's Communications Mining selects at least one data source from the plurality of data sources, the at least one data source being selected when

results of the query are greater than or equal to an accuracy thresholds. For example, UiPath selects a data source (including communications from those data sources) to apply the communications with a particular label to put into a stream, when the communications within that label meet sufficient confidence thresholds (accuracy thresholds).

## Selecting label confidence thresholds

**Introduction**

The platform is typically used in one of the first steps of an automated process: ingesting, interpreting and structuring an inbound communication, such as a customer email, much like a human would do when that email arrived in their inbox.

When the platform predicts which labels (or tags) apply to a communication, it assigns each prediction a confidence score (%) to show how confident it is that the label applies.

If these predictions are to be used to automatically classify the communication, however, there needs to be a binary decision - i.e. does this label apply or not? This is where **confidence thresholds** come in.

A confidence threshold is the confidence score (%) at or above which an RPA bot or other automation service will take the prediction from the platform as a binary 'Yes, this label does apply' and below which it will take the prediction as a binary 'No, this label does not apply'.

*https://support.reinfer.io/support/solutions/articles/48001157667-selecting-label-confidence-thresholds.*

Here you can:

- Give the stream a title and a description

- Set an API name

- Specify the model (labeller) version to use (this is very important)

- Use the filters bar on the left-hand-side to set user-property filters which must be satisfied for verbatims to enter the queue for the stream

- Select a label and a confidence threshold as per below:

*https://support.reinfer.io/support/solutions/articles/48000982498-create-a-stream.*

Setting a confidence threshold

*https://support.reinfer.io/support/solutions/articles/48000982498-create-a-stream.*

62.     On information and belief, UiPath's Communications Mining monitors, based on a set schedule, the at least one data source to extract non-textual data from the at least one data source when at least an update to stored data matches the query, newly added non-textual data matches the query, or a combination thereof.  UiPath monitors the data sources based on a schedule.  For example, UiPath explains how to "Monitor your communication"— "UiPath gives businesses a custom-filtered, real-time view of all service channels—extracting the information they care about most. Built-in analytics allow process owners to track trends and measure service quality and performance at all levels. Custom real-time alerts enable teams to respond to breaking issues in an agile way, driving continuous improvement."

https://www.uipath.com/blog/product-and-updates/introducing-uipath-communications-mining;

*see also* https://www.uipath.com/product/document-understanding ("Wouldn't it be great if software robots could understand documents? To extract, interpret, and process data for you, even from PDFs, images, handwriting, and scans? UiPath Document Understanding helps your robots do just that. Delegate more of your digital paperwork with a boost from AI.").



*https://www.youtube.com/watch?v=Qayl7M8u5AQ.*

63.    On information and belief, UiPath's Communications Mining establishes a communication channel with a second user based at least in part on the data extracted from the at least one monitored data source.  *See, e.g.*, https://www.uipath.com/blog/product-and-updates/introducing-uipath-communications-mining ("UiPath Robots use the data created by Communications Mining to extend automation into service and conversation-based processes. This allows businesses to automate transactional requests and workflows. Tasks like triaging

emails, updating customer information, and case creation are now automated from end to end by UiPath.").

64.    The other Accused Products/Services similarly practice every element of Claim 1 of the '712 patent.

65.    UiPath of course knows how its products operate, and on information and belief, could have investigated the '712 patent.  UiPath has been given further notice of the '712 patent and their infringement of the '712 patent through the filing of this Complaint.  On information and belief, UiPath is either knowingly infringing the '712 patent or is willfully blind to its infringement, and continues to act in wanton disregard of Rule 14's patent rights.  On information and belief, UiPath has made no attempts to design around the '712 patent or otherwise stop its infringing behavior.  UiPath's infringement of the '712 patent therefore has been and remains willful.

66.    UiPath also indirectly infringes the '712 patent by inducing others to infringe and contributing to the infringement of others, including third party users of UiPath's Accused Products/Services  in this District and throughout the United States.  As described above, on information and belief, UiPath has known about the '712 patent since the filing of this Complaint.

67.    On information and belief, UiPath has actively induced the infringement of the '712 patent under 35 U.S.C. § 271(b) by actively inducing the infringement of Accused Products/Services by third parties in the United States.  UiPath knew or was willfully blind to the fact that its conduct would induce these third parties to act in a manner that infringes the '712 Patent in violation of 35 U.S.C. § 271(a).

68.    UiPath actively encourages and continues to actively encourage third parties to directly infringe the '712 Patent by, for example, marketing the Accused Products/Services and infringing functionalities to consumers; working with consumers to implement, install and/or

operate the Accused Products/Services and infringing functionalities; creating, implementing, maintaining, and advertising the UiPath Marketplace; fully supporting and managing consumers' continuing use of the Accused Products/Services and infringing functionalities; and providing technical assistance to consumers during their continued use of the Accused Products/Services and infringing functionalities.[22]

69.     On information and belief, UiPath contributorily infringes the '712 Patent under 35 U.S.C. § 271(c) by importing, selling, and/or offering to sell within the United States the Accused Products/Services (or components thereof) that constitute a material part of the claimed invention and are not staple articles of commerce suitable for substantial non-infringing use.

## VII.
## DAMAGES

70.     Rule 14 incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

71.     As a result of UiPath's acts of infringement, Rule 14 has suffered actual and consequential damages; however, Rule 14 does not yet know the full extent of the infringement and its extent cannot be ascertained except through discovery and special accounting. To the fullest extent permitted by law, Rule 14 seeks recovery of damages for reasonable royalties, unjust

---

[22] *See e.g.,* https://marketplace.uipath.com; https://www.uipath.com/learning/video-tutorials; https://www.uipath.com/blog; https://www.uipath.com/resources/all; https://www.uipath.com/learning/video-tutorials/workflow-automation-uipath-studio; https://docs.uipath.com/studio/standalone/2023.4/user-guide/tutorials; https://www.uipath.com/support; https://www.uipath.com/rpa/what-is-process-mining; https://forum.uipath.com/t/how-to-use-process-mining-tool/542677; https://www.uipath.com/product/process-mining; https://docs.uipath.com/communications-mining/automation-cloud/latest/user-guide/gs-technical-support; https://forum.uipath.com/t/how-to-add-task-mining-option-to-automation-cloud/318724; https://www.uipath.com/product/task-mining; https://forum.uipath.com/t/how-to-enable-communication-mining/529855; https://www.uipath.com/product/communications-mining; https://docs.uipath.com/document-understanding/automation-cloud/latest/user-guide/du-app; https://docs.uipath.com/document-understanding/automation-cloud/latest/user-guide/getting-started-with-document-understanding.

PLAINTIFF RULE 14 LLC'S COMPLAINT – page 31

enrichment, lost profits, and/or benefits received by UiPath as a result of its past and ongoing infringement of the Asserted Patents. Rule 14 further seeks any other damages to which Rule 14 is entitled under law or in equity.

72.    On information and belief, to the extent applicable, Rule 14 has complied with the notice and/or marking requirements of 35 U.S.C. § 287(a), to the extent they apply, with respect to each of the Asserted Patents.

73.    Rule 14 is entitled to recover reasonable and necessary attorneys' fees under applicable law.

## VIII.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Rule 14 respectfully requests that this Court enter judgment in its favor and grant the following relief:

a) A judgment that the Accused Products/Services infringe the Asserted Patents;

b) That such infringement is willful;

c) A judgment and order requiring UiPath to pay Rule 14's damages in an amount adequate to compensate Rule 14 for UiPath's infringement, but in no event less than a reasonable royalty under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of judgment and beyond, with accounting, as needed;

d) An award of enhanced damages pursuant to 35 U.S.C. § 284;

e) A ruling finding that this case is exceptional and awarding Rule 14 its reasonable attorneys' fees under 35 U.S.C. § 285;

f) A judgment and order requiring UiPath to pay Rule 14's costs of this action (including all disbursements);

g) An order for accounting of damages;

h) A judgment and order requiring UiPath to pay pre-judgment and post-judgment interest to the full extent allowed under the law; and,

i) A permanent injunction prohibiting UiPath from continued infringement of the Asserted Patents.

Such other and further relief as the Court may deem just and proper under the circumstances.

## IX.
## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Rule 14 hereby demands a trial by jury for all issues triable by jury.

Dated: December 22, 2023

Respectfully Submitted,

/s/ *Melissa R. Smith*

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

Christine E. Lehman (*pro hac vice* to be filed)
clehman@reichmanjorgensen.com REICHMAN
JORGENSEN LEHMAN
& FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Michael Matulewicz-Crowley (*pro hac vice* to be filed)
Mmatulewicz-crowley@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 560-3501

Laura Carwile (*pro hac vice* to be filed)
lcarwile@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

**Attorneys for Plaintiff**
***Rule 14 LLC***